UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JAMES R. BANKS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.: 12-1473 |
| | ) | |
| JEFF STOLZ, RYAN SMITH, NATHAN UJINKSKI, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, ROBERT HUSTON, CHRIS MCKINNEY, THE CITY OF PEKIN, THE COUNTY OF TAZEWELL | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# ORDER AND OPINION

This matter is now before the Court on Defendants Chris McKinney ("McKinney"), Officer Jeff Stolz ("Stolz"), Officer Ryan Smith ("Smith"), Officer Nathan Ujinski ("Ujinksi") and City of Pekin's [103] and [105] Motions for Summary Judgment. This matter has been fully briefed and for the reasons set forth below, the Motions [103], [105] are DENIED.

## STATEMENT OF FACTS

This 42 U.S.C. § 1983 action arises from an incident that took place in Pekin, Illinois on December 10, 2011. The incident was recorded by a squad car video. The video shows Officer Stolz following a van driven by Plaintiff James Banks ("Banks"). The van stopped at a stop sign and its right turn signal was flashing. Banks made a right hand turn and proceeded down the street. Officer Stolz also made a right turn and less than thirty seconds later turns on his siren and lights. Banks did not stop his vehicle and led police officers on a 13 minute car chase through residential areas of Pekin. The video shows Banks speeding on main roads and side streets, running stop signs, and nearly hitting other vehicles. Banks eventually stops the van at an

intersection blocked by police cars. At the time of the initial stop, there are four police officers that can be seen on the video. Before any officers approach the vehicle, Banks extends both hands out of the van's window. Officer Ujinkski exits his squad car and approaches the van. It appears from the video that words were exchanged; however, the audio from the recording is unintelligible due to the loudness of police sirens.

Officer Ujinkski opens the door of the van and pulls Banks out of the vehicle and onto the pavement. The video shows Banks lying on his side, not moving, while four officers are gathered around him. At 12:57, Officer Stolz deployed his Taser on Banks' back. Milliseconds later, Banks' begins moving his legs in a kicking motion for the first time. Officers then drag Banks, who is still on the pavement, away from the vehicle and further into the street. At 13:02 in the video, Banks is once again lying on his side, his hands are obscured, but his feet are not moving. From 13:05 to 13:09, one of the officers knees Banks in the back four times. At 13:02, Officer McKinney arrives at the scene, jumps out of his vehicle. At 13:11, it appears that Officer McKinney deploys his Taser and once again Banks' legs began kicking. At 13:17, another officer places his knee on Banks' left leg, pushing it into the ground. At approximately 13:30, it appears the officers have secured Banks and Banks remains handcuffed on the ground for the remainder of the 19:21 video.

**DISCUSSION**

**1.     Legal Standard**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552 (1986). The moving party may meet its burden of showing an

absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513(1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. See Celotex Corp., 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. See Anderson, 106 S.Ct. at 2511; Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

**2. Analysis**

When addressing an excessive force claim brought under §1983, the analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. See Graham v. Connor 490 U.S. 386, 394 (1989). The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

Where, as here, the excessive force claim arises in the context of the seizure of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons...against unreasonable...seizures." Id. All claims that law enforcement officers have used excessive force in the course of an arrest or other "seizure" of a free citizen are analyzed under the Fourth

Amendment and its objective "reasonableness" standard. Id. at 395. In other words, to properly state a fourth amendment excessive force claim, a plaintiff must establish a seizure occurred and the officer's use of force in effecting the seizure was unreasonable. See United States v. Hernandez, 1997 WL 80916, *3 (N.D. Ill. Feb. 21 1997).

The reasonableness of the officer's use of force is to be judged from the perspective of a reasonable officer on the scene at the moment that the force was used. Graham, 490 U.S. at 396. Courts must consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 395; see also, Lawrence v. Kenosha County, 391 F.3d 837, 843 (7th Cir. 2004); Abdullahi v. City of Madison, 423 F.3d 763, 768 (7th Cir. 2005). The question requires consideration of the totality of the facts and circumstances known to the officer at the time the force is applied and turns on whether the plaintiff can prove that the force was applied in an objectively unreasonable manner. See Tennessee v. Garner, 471 U.S. 1, 8-9 (1985); Hudson v. McMillian, 503 U.S. 1, 6–7, 112 S.Ct. 995 (1992); see also, Santiago v. Walls, 599 F.3d 749, 757 (7th Cir.2010); Phillips v. Cmty. Ins. Corp., 678 F.3d 513, 519 (7th Cir. 2012). Courts must "remain cognizant of 'the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" Abbott v. Sangamon County, Illinois, 705 F.3d 706, 724 (7th Cir. 2013). Accordingly, considerable "leeway" is given to officers' assessments about what constitutes "appropriate force in dangerous situations." Id., at 724-25, *citing* Baird v. Renbarger, 576 F.3d 340, 344 (7th Cir. 2009).

Defendants argue they are entitled to summary judgment because based on the standard of an objectively reasonable officer at the scene at the arrest, they acted reasonably in applying

4

force necessary to effectuate the arrest. Specifically, the Defendants argue the force utilized was necessary because Banks led police on a high speed chase through residential neighborhoods, made numerous traffic violations, and placed pedestrians, other motorists, and police officers' lives in danger. Defendants allege Banks yelled he was "so fucking high right now" as he was being arrested. The Defendants also state Banks was resisting arrest by hiding his hands under his body and kicking his legs.

Banks' version of the events differs significantly from the Defendants. Banks denies he made a turn signal violation, but admits he put other lives in danger by leading police on a chase through the Pekin community. As to the arrest, Banks states after he stopped his vehicle he complied with all police commands. Specifically, Banks asserts when directed he placed his hands outside of his vehicle. In addition, Banks states that immediately after he was pulled from the vehicle officers Tased him, dragged him several feet, Tased him again, kicked him, kneed him, and Tased him again, despite the fact that he was not resisting arrest. Banks also denies telling officers that he was high.

Before analysis of the squad car video, these disputed facts create a genuine issue of material fact for jury determination. A review of the squad car video does not change that analysis. The video shows Banks being pulled out the vehicle and immediately brought to the ground by the officers. Initially Banks is laying on his side and his legs and feet are not moving. From the video it appears that Banks starts moving and kicking his legs after the officers discharge the Taser, further confirming the dispute of material facts. See Cyrus v. Town of Mukwonago, 624 F.3d 856, 862 (7th Cir. 2010)(a jury may view a defendant's behavior not as an attempt to flee but rather an involuntary reaction to the second Taser shock). In addition, the video shows an officer kneeing Banks in the back at least four times after officers had already

Tased him on two separate occasions. See Gonzalez v. City of Elgin, 578 F.3d 526, (7th Cir. Ill. 2009) (finding officers used excessive force when they kicked and punched the arrestees).

At summary judgment, the Court cannot judge credibility and must resolve these disputes in favor of Banks as the non-moving party. See Cyrus, 624 F.3d at 862 (summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations").

Alternatively, the Defendants argue that even if their use of force was not objectively reasonable, they are entitled to qualified immunity. In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court enunciated the "modern standard to be applied in qualified immunity cases." Auriemma v. Rice, 895 F.2d 338, 341 (7th Cir. 1990). The Court stated:

> Governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818. Qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

The test for qualified immunity is "whether the law was clear in relation to the specific facts confronting the public official when [he or she] acted." Green v. Carlson, 826 F.2d 647, 649 (7th Cir. 1987). In deciding whether a defendant will enjoy qualified immunity, courts must determine: "(1) whether the plaintiff has asserted a violation of a federal right, and (2) whether the constitutional standards implicated were clearly established at the time in question." Eversole v. Steele, 59 F.3d 710, 717 (7th Cir. 1995), *citing* Kernats v. O'Sullivan, 35 F.3d 1171,

1176 (7th Cir. 1994). The first issue is a threshold one. Scott v. Harris, ___ U.S. ___, 127 S.Ct. 1769, 1774 (2007), *citing* Saucier v. Katz, 533 U.S. 194, 201 (2001). If the plaintiff fails to state a violation of a federal right, then the plaintiff's claim fails altogether and the court need not go on to decide whether the law was clearly established at the time of the offense. Id.; *see also,* Marshall v. Allen, 984 F.2d 787, 793 (7th Cir. 1993); Zorzi v. County of Putnam, 30 F.3d 885, 892 (7th Cir. 1994); Eversole, 59 F.3d at 717.

The Court has found a genuine issue of material fact as to whether Banks has demonstrated that his federal rights were violated by the use of excessive force in connection with the traffic stop. The question then becomes whether the Defendants' conduct violated clearly established law.

Prior to the events in this case, it was well-settled that the Fourth Amendment prohibits an officer from using "greater force than [is] reasonably necessary to make the arrest." Lester v. City of Chicago, 830 F.2d 706, 713 (7th Cir. 1987). The Seventh Circuit had further held that the use of more force than necessary on a plaintiff who resists only that force can constitute excessive force. Morfin v. City of E. Chicago, 349 F.3d 989, 1005 (7th Cir. 2003). Courts of Appeal have also established that although an initial use of Taser may be justified, the repeated tasering may be found to be grossly disproportionate to any threat posed and therefore unreasonable. See Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009) (continued use of a Taser after a subject has been subdued or is no longer resisting is excessive); Meyers v. Balt. County, 713 F.3d 723, 734 (4th Cir. Md. 2013)(it is an excessive and unreasonable use of force for a police officer repeatedly to administer electrical shocks with a taser on an individual who no longer is armed, has been brought to the ground, has been restrained physically by several other officers, and no longer is actively resisting arrest.); Austin v. Redford Twp. Police Dep't, 690 F.3d 490, 498-499 (6th Cir. Mich. 2012)(the use of non-lethal, temporarily incapacitating

7

force on a handcuffed suspect who no longer poses a safety threat, flight risk, and/or is not resisting arrest constitutes excessive force).

> Force is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force . . . It's the totality of the circumstances, not the first forcible act, that determines objective reasonableness.

Cyrus v. Town of Mukwonago, 624 F.3d 856, 863 (7th Cir. 2010).

Although Banks' actions leading up to the actual stop would clearly place a reasonable officer in apprehension of what they may encounter as they approached Banks, the area of law, prohibiting officers from using "greater force than necessary" is well settled, and well known to any reasonable officer or person. Therefore, the Defendants would have been on notice that their actions, after the stop, may violate clearly established law as to the use of force. Accordingly, this issue must be left for a jury to decide.

Lastly, Banks concedes that he has no claims against Officer Ryan Smith or the City of Pekin; accordingly, the claims against these parties are dismissed.

## CONCLUSION

For the reasons set forth above, Defendant Chris McKinney, Officer Jeff Stolz, Officer Ryan Smith, and Officer Nathan Ujinski Motions for Summary Judgment [103] [105] are DENIED. Defendants Ryan Smith and City of Pekin are TERMINATED. This matter remains sets for final pretrial on May 8, 2015 and jury trial on June 22, 2015.

Entered this 27th day of April, 2015.

/s/ James E. Shadid
James E. Shadid
Chief United States District Judge